## Johnson's License

*Leon H. Fox,* for appellant.

*Joseph E. Papano,* special deputy, for Pennsylvania Liquor Control Board.

KNIGHT, P. J., October 18, 1938.—Appellant holds a retail dispenser's license issued to him on June 1, 1938, for premises 118 South Easton Road, Cheltenham Township, Montgomery County, Pa.

On or about May 1, 1938, petitioner leased premises 122 South Easton Road, two doors from where he had his licensed premises, and moved his establishment to the new location, which he renovated, repaired, and refurnished at a cost in excess of $5,000, and where he is conducting a high class family restaurant.

Shortly after leasing said premises, appellant applied for a transfer of his license to the new location, which was refused by the board, for the specific and only reason that "There is a restriction in the deed for the property which prohibits the premises from the using of the property for the sale of malt or spirituous liquors."

It is conceded by the board that all its rules and regulations have been fully complied with by appellant, and that the only reason for refusing the transfer is the above-mentioned restriction in the deed.

This restriction, according to the evidence, is contained in a deed from Martin Luther Kohler et ux. to Bartlett T. Rorer, dated April 16, 1892, and recorded in Deed Book no. 372, p. 129, and is as follows:

"That no building shall be erected at any time hereafter used for the manufacture or sale of malt or spirituous liquors, blacksmith, carpenter, wheelwright shop, steam mill, tannery, slaughter house, skin dressing establishment, livery stable, piggery, glue, soap, starch, candle or pouderette, or for any offensive use or occupation."

There is nothing in the evidence to show how much land was included in the original scheme of development, or how much of the immediate neighborhood is subject to the same restriction, but it is conceded that all the properties in the block bounded by Easton Road, Waverly Road, Harrison Avenue, and Glenside Avenue, are covered by the same or a like restriction.

This block is entirely built up. Harrison Avenue is entirely residential, being improved by single or semi-detached homes, varying in value from $5,000 to $10,000. No properties front on Waverly Road, it forming the boundary of lots facing on Harrison Avenue and Easton Road.

On Glenside Avenue we find nothing but business properties; a taproom, a store, a barber shop, a dentist's office, and a hair dressing establishment. On Easton Road there is the American Store, a taproom, the Orange Cleaners, a five-and-ten-cent store; a garage supply store, an engineer's office, a cigar store, a shoemaker's shop, a restaurant and taproom, a cleaning establishment, appellant's restaurant, then nine residences, and an apartment house to Waverly Road.

On the opposite side of Easton Road this square is devoted entirely to business, including a State liquor store, with the exception of a small apartment house.

The premises in question, are in the heart of the business district of the thriving community of Glenside. Along Easton Road, from the railroad to Waverly Road, and be-

yond, the trend has been steadily from residence use to business use, during the last decade. In the block in question, we have three taprooms (not including appellant's), at the present time, and across the street a State liquor store.

In Cheris' Liquor License Case, 127 Pa. Superior Ct. 355, the right of the Liquor Control Board to refuse a license, because of a restrictive covenant in a deed, is fully sustained.

In McGettigan's Liquor License Case, 131 Pa. Superior Ct. 280, decided June 27, 1938, the same court said:

"We thought we had made it clear that the Liquor Control Board may lawfully and properly refuse to issue or renew such a license where it is brought to their attention that the sale of alcoholic liquors on the premises is prohibited in a deed to the property for which the applicant desires a license, unless, we may add, the restriction has been relinquished by deed or the entire restrictive plan has been abandoned."

In the present case, the restrictive covenant has not been relinquished by deed, and in line with the above decision, we have to determine whether the entire restrictive plan has been abandoned.

There is no evidence as to what constituted the original restricted development, but we are of the opinion that we have only to consider the block above described.

In construing the opinion of the Superior Court in McGettigan's Liquor License Case, supra, it becomes necessary to determine just what the court meant by the words "or the entire restrictive plan has been abandoned."

Do these words mean that the restrictive covenant should be enforced, so long as it is observed in any part of the original scheme of development, or, do they apply to the restrictions and not to the territory covered by the original scheme. We are inclined to the latter view.

It is well known that, in the Philadelphia suburban area, there are many large real estate developments, comprising many lots. Most of these are subject to re-

strictions placed upon them, as in the present instance, many years ago. In many of them the years have wrought great changes: Business centers have sprung up where only residences were originally intended. To hold that a restrictive covenant which has been generally violated, and universally ignored in one section of a development, should be enforced, because in another section of the same development perhaps one mile away, the restriction was observed and enforced, would be unjust and unfair to say the least.

We think a safe rule to follow, is that laid down in the case of Landell et al. v. Hamilton et al., 175 Pa. 327, that where a building restriction is of substantial value to the dominant tenement, equity will restrain its violation. It follows, that where a restriction has ceased to be of substantial value to the dominant tenement, equity will not restrain its violation.

Certainly the restriction against the sale of beer and liquor in premises fronting on Easton Road, in the block in question, has ceased to be of any substantial value to the owners of residences within the block. The 46-year-old restrictions as to setbacks and the sale of liquor, have been violated in the immediate vicinity of appellant's restaurant, apparently with the consent and approval of those who could object as owners of dominant tenements, for a number of years. Three taprooms are already in the immediate vicinity of the restaurant, while across the street is a State liquor store.

No one, save the Liquor Control Board, is here protesting against the transfer of this license; on the contrary, the evidence shows that the residents in the block are in favor of granting a license to appellant.

We are of the opinion, that as to appellant's property, the restrictive covenant, as to the sale of liquor, has been wholly abandoned by those who could have at one time protested. The fact that the Liquor Control Board has granted appellant a license for an equally restricted property as well as three licenses in the immediate vicin-

ity; the fact that the State conducts a liquor store across the street; and the fact that here all that is now asked is that the license now existing be transferred to a property two doors away; all show that the restriction against the sale of liquor in the immediate neighborhood of appellant's restaurant has been wholly abandoned. We are, therefore, of the opinion that this appeal should be sustained, and the transfer permitted.

And now, October 18, 1938, the appeal is sustained, and the Pennsylvania Liquor Control Board is directed to permit and allow the transfer of the license to premises 122 South Easton Road.